IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST SANITARY SERVICE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| SRG Global, Inc., ) | |
| a division of Guardian Industries Corp. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| SERVE: ) | |
| ) | |
| The Corporation Company ) | |
| Marie Hauer, Assistant Secretary ) | |
| 40600 Ann Arbor Road E. #201 ) | |
| Plymouth, MI 48170-4675 ) | |

## COMPLAINT

Plaintiff Midwest Sanitary Services, Inc. ("Midwest"), by and through its attorneys, for its Complaint against Defendant SRG Global Inc., a division of Guardian Industries Corp. ("SRG") hereby states as follows:

### NATURE OF THE ACTION

1. This is an action brought under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, for response costs, for contribution, and for all damages Midwest has suffered and may continue to suffer as a result of releases and threatened releases of one or more hazardous substances at or from the Midwest Sanitary Services facility in Wood River, Illinois. Midwest also seeks a declaratory judgment that SRG is strictly, jointly and severally liable for all response costs incurred at its facility consistent with the National Contingency Plan. Midwest also seeks all

damages Midwest may recover caused by SRG's negligence *per se*, common law negligence, nuisance, trespass, and unjust enrichment.

## PARTIES

2.  Midwest is an Illinois corporation which provides waste transportation and related services in the greater St. Louis area, specializing in the transportation of hazardous and special manifested waste. Midwest has been in operation for forty-plus years.

3.  SRG is a division of Guardian Industries Corp., and is headquartered in Troy, Michigan. SRG was formally known as, and is the corporate successor to, Siegel-Robert Automotive. SRG holds itself out to be one of the world's leading manufacturers of chrome plated plastic parts for the automotive and commercial truck industries and has a manufacturing presence in North America, Western and Central Europe and Asia.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §§9607 and 9613(b) and (g)(2), 28 U.S.C. §1331, 28 U.S.C. §§2201-2202 and 28 U.S. Code § 1332(a)(1).

5.  Venue is proper in this division and district pursuant to 42 U.S.C. §9613(b) and 28 U.S.C. §1391(b) because: 1) the property where the releases and threatened releases of hazardous substances have occurred is located within the territorial limits of this District; 2) the damages giving rise to these claims occurred in this District; and 3) Midwest has its principal place of business in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

6.  Sometime on or about August 14, 2016, Midwest personnel discovered that something had corroded a metal vacuum box causing a release of liquid material onto Midwest's

facility located at 333 N Old St. Louis Road, Wood River, IL 62095 (hereinafter "the Facility") (See Exhs. 1-4, 10).

7. Upon making the discovery, Midwest promptly notified emergency responders and governmental authorities including: Environmental Management Alternatives ("EMA"); Illinois Environmental Protection Agency ("IEPA"); Local Emergency Planning Committee ("LEPC"); and the National Response Center by telephone about the release. (*See* Exhs. 1- 4, 10, 13).

8. Personnel at EMA indicated over the phone that they would arrive to assess and address the situation as soon as possible, and directed Midwest to immediately plug the storm sewer drain and to take additional temporary measures in an attempt to stop the spread of liquid, which Midwest did. (*See* Exh. 10).

9. From August 15-17, 2016 and on August 23, personnel from IEPA and EMA visited the Facility to oversee, direct and monitor response actions. (*See* Exh. 10).

10. Upon investigation into the cause of the release, it was discovered that on or about August 12, 2016, SRG had arranged to dispose of what it described as hazardous solid waste from SRG's Ripley, Tennessee location. (*See* Exhs. 5-10).

11. When Midwest was contacted to transport the waste, Midwest was informed that the waste was a solid and non-corrosive material. (*See* Exhs. 6-10).

12. When the driver arrived at SRG's Ripley, Tennessee plant on August 12, 2016, the driver provided a 25 yard vacuum box #2583 to contain and transport the waste. The vacuum box was metal. (*See* Exhs. 6-10).

13. Upon investigation into the cause of the release at Midwest's Facility, it was determined that SRG had incorrectly labeled and manifested the waste as a non-corrosive

hazardous solid waste when it was actually a liquid hazardous waste, including chromic and/or sulfuric acid. (*See* Exhs. 5-10).

14. The Resource Conservation and Recovery Act (hereinafter "RCRA"), RCRA §§3001-3023, 42 U.S.C. §6901 et. seq., establishes a comprehensive hazardous waste management system under the authority of Subtitle C. The objective of the Subtitle C program is to ensure that hazardous waste is handled in a manner that protects human health and the environment. There are Subtitle C regulations for the generation, transportation, treatment, storage, and/or disposal of hazardous wastes.

15. RCRA §3002(a) requires that a manifest accompany and identify each waste shipment.

16. The manifest accompanies the waste from the point of origin to its final disposal site and requires the clear identification of waste type and source at all times.

17. Due to SRG's misidentification of its waste for disposal as a non-corrosive solid, when the shipment arrived at Midwest's Facility labeled as such it was stored in an area of the Facility designed for the temporary storage of properly contained solid hazardous waste.

18. Approximately 3 inches of rain fell between August 12th and 14th, during which time SRG's waste corroded portions of the vacuum box container allowing the contents to spill to the ground at Midwest's Facility. (*See* Exh. 10).

19. Because of the heavy rainfall, the waste threatened a storm drain at Midwest's Facility. The storm sewer discharges to the City of Wood River's sanitary sewer treatment system. (*See* Exh. 10).

20. IEPA issued separate Notices of Violations ("NOV") to SRG as the waste generator and to Midwest as the current owner of the Facility. (Exhs. 10, 11).

21. Midwest is entering into a Compliance Commitment Agreement ("CCA") with the IEPA which requires Midwest to complete multiple compliance activities related to the release of SRG's waste at the Facility. (*See* Exh. 12).

22. Because of the release and SRG's refusal to reimburse Midwest for its response costs to date and its future response costs, Midwest has incurred, and will continue to incur, response costs and has suffered damages.

## CLAIMS FOR RELIEF

### COUNT I

23. Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

24. Midwest is a "person" within the meaning of Section 101(21), CERCLA, 42 U.S.C. § 9601(21).

25. SRG is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

26. The Midwest Facility is a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

27. The air, soils, waterways, fish, and other natural resources in and around the Midwest Facility constitute the "environment" as defined by Section 101(8) of CERCLA, 42 U.S.C. § 9601(8).

28. Chromic acid and sulfuric acid are "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14). (*See also* Exh. 13)

29. SRG's actions caused one or more "releases" or "threatened releases" as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), including, but not limited to, spills,

leaks, or drips of chromic and sulfuric acid into the soils, sediments, and surface water pathways at the Facility. (*See* Exhs. 1-4, 10, 13)

30. SRG is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) as, or as successors-in-interest to, persons who by contract, agreement or otherwise, arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by them or by another party or entity, at the Facility. SRG caused hazardous substances to be delivered to the Midwest Facility in a container that was not designed nor could safely hold the hazardous substances. The conduct in which SRG or its agent(s) engaged constitutes an arrangement for disposal or treatment or constitutes an arrangement with a transporter for transport for disposal or treatment of hazardous substances.

31. The release or threatened release of hazardous substances at the Facility has caused and will continue to cause Midwest to incur necessary costs of response consistent with the National Contingency Plan, within the meaning of Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), including, without limitation, the response costs it has paid and will continue to pay to contractors and consultants for their services of, among other things, surveying the Facility, sampling the soils and other resources, delineating the scope of work, investigating the cause of the release and the persons responsible, excavating soils, treating soils, and related administrative and oversight activities.

32. The response costs and future response costs that Midwest has incurred and will continue to incur are and will be consistent with the National Contingency Plan, as described in 42 U.S.C. § 9605 and 40 C.F.R. Part 300.

33. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Midwest is strictly liable for response costs incurred and future response costs to be incurred in connection with the Facility.

34. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), SRG is liable to Midwest for the response costs incurred and future response costs to be incurred by Midwest in connection with the Facility, and Midwest is entitled to recover from SRG for its response costs incurred and future response costs to be incurred with regard to the Facility.

## COUNT II

35. Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

36. IEPA's Violation Notice issued to Midwest and the CCA constitute(s) administrative action within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B). Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), Midwest is entitled to contribution from SRG for response costs incurred and for future response costs to be incurred and for amounts paid or to be paid by Midwest in connection with the administrative action(s) and to an allocation by the Court of all of Midwest's recoverable costs and damages using such equitable factors as the Court determines are appropriate.

37. Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), SRG is liable to Midwest in contribution for all of Midwest's damages and costs including response costs, future response costs, and the amounts Midwest has paid and will pay to reimburse the USEPA and/or IEPA for their response costs, administrative costs, and oversight costs, as well as for any other recoverable costs.

38.     Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), Midwest is entitled to contribution from SRG for response costs incurred and for future response costs to be incurred and for amounts paid or to be paid to the USEPA and/or IEPA by Midwest in connection with the Facility, and to an allocation by the Court of all of Midwest's recoverable costs and damages between Midwest and SRG Defendant using such equitable factors as the Court determines are appropriate.

## COUNT III

39.     Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

40.     An actual controversy exists, within the meaning of 28 U.S.C. §2201 and CERCLA Section 113(g)(2), 42 U.S.C. §9613(g)(2), between Midwest and SRG with respect to their respective rights and responsibilities for the response costs incurred and to be incurred in connection to the release and threatened release of hazardous substances at the Facility.

41.     Midwest is entitled to a declaratory judgment on SRG's liability for response costs that will be binding in any subsequent action or actions to recover further response costs and which declares that SRG is liable under CERCLA Section 107(a), 42 U.S.C. §9607(a), for all of the response costs incurred and to be incurred by Midwest with respect to the contamination at the Facility, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. §9613(g)(2), and 28 U.S.C. §§2201-2202.

## COUNT IV

42.     Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

43. SRG violated the laws of the State of Illinois in its illegal management or mismanagement of hazardous waste, specifically, but not limited to 415 ILCS 5/9, 5/12, 5/21, et al.

44. Midwest is a party within the class intended to be protected under 415 ILCS 5/9, 5/12, 5/21, et al.

45. The injury suffered by Midwest is the type of injury 415 ILCS 5/9, 5/12, 5/21, et al. was intended to prevent.

46. SRG was negligent in mislabeling its hazardous waste manifest.

47. SRG was negligent by failing to use reasonable care in transporting its waste.

48. SRG was negligent by failing to warn Midwest of the real potential for harm even though SRG knew or should have known its own hazardous waste characteristics.

49. SRG was negligent by failing to take appropriate measures to halt the migration of its hazardous waste and failing to clean up the discharged hazardous waste.

50. As a result of SRG's negligence, hazardous waste was discharged into Midwest's air, soil, and, upon information and belief, water in direct violation of Illinois' environmental statutes and regulations.

51. The negligence of SRG directly and proximately caused or contributed to cause Midwest to suffer damages and losses, including, but not limited to, the cost of past and future remediation.

## COUNT V

52. Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

53. As generators of the waste, SRG owed a duty to Midwest to exercise due care in the handling, control, disposal, and labeling of the waste.

54. SRG owed a duty and had the means to warn any handlers of the waste about known hazards associated with the waste.

55. SRG had a duty not to contaminate the environment.

56. At all times relevant to this litigation, SRG knew or should have known the waste was a hazardous corrosive liquid that would corrode metal.

57. At all times relevant to this litigation, SRG knew or should have known that the labeling of waste dictates the hazards a handler of that waste would expect to encounter.

58. Midwest could not ordinarily discover or protect itself against the hazards of the waste in the absence of sufficient warnings.

59. SRG negligently breached its duties of due care to Midwest by failing to adequately identify its waste properly.

60. As a direct and proximate result of the foregoing negligent act on the part of SRG, the waste corroded vacuum box #2583 and spilled onto the ground at Midwest's Facility.

61. Due to this hazardous waste release, costly remedial actions were required and continue to be required.

### COUNT VI

62. Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

63. SRG manufactured and/or generated the waste that spilled onto and contaminated Midwest's Facility.

64. Midwest did not consent for SRG's waste to be released onto the Facility.

65. Midwest's Facility has been physically invaded and contaminated by SRG's waste as a direct and proximate result of the intentional, unreasonable, negligent and/or reckless conduct of SRG, all as alleged herein.

66. The hazardous waste contamination of Midwest's Facility, caused by SRG's conduct, has damaged Midwest's real property and business and unreasonably interfered with the use, benefit and enjoyment of Midwest's real property.

67. This damage and interference is ongoing and constitutes a continuing nuisance.

68. This nuisance SRG has inflicted upon Midwest is substantial, unreasonable, and intentional or negligent.

69. The nuisance created and/or maintained by SRG can and should be abated by SRG.

70. SRG knew or should have known that the release of hazardous waste, and/or the failure to properly eliminate and clean up the waste would substantially serve to result in an invasion of Midwest's interests.

71. As a direct and proximate result of SRG's acts and omissions creating the above-described nuisance, Midwest has suffered economic loss and damages, including, but not limited to, interference with its interest in the private use and enjoyment of its real property.

### COUNT VII

72. Midwest realleges and reaffirms each and every allegation set forth above as if fully set forth herein.

73. Midwest is the owner and/or actual possessor of the Facility.

74. SRG manufactured and/or generated the waste that spilled onto and contaminated Midwest's Facility.

75. Midwest did not consent for SRG to release hazardous waste on its real property.

76. SRG and their agents and employees knew, or in the exercise of reasonable care should have known, that the waste being transported by Midwest contained a hazardous liquid waste that would corrode metal.

77. SRG negligently, recklessly, voluntarily, and/or intentionally caused the release and/or failed to properly control, handle, store, and contain the waste such that it directly and proximately caused contamination to Midwest's Facility.

78. The spill of the waste at Midwest's facility constitutes a trespass.

79. As a direct and proximate result of the trespass, Midwest has been damaged and is entitled to damages alleged herein, including but not limited to, diminution in property value, loss of use and enjoyment cost of bringing the property to its original condition, investigation, remediation, and treatment, and/or to such other appropriate relief Midwest may elect at trial.

## COUNT VIII

80. Midwest realleges and reaffirms each and every allegation set forth in the preceding paragraphs as if fully restated herein.

81. By arranging for the disposal or treatment of hazardous substances by another party or entity, or arranging with a transporter for transport for disposal or treatment of hazardous substances by another party or entity, SRG has caused response costs to be incurred by Midwest.

82. Midwest has conferred, and will continue to confer, benefits on SRG by paying SRG's share of the response costs.

83. To the extent that Midwest has paid such costs which are the legal obligation of SRG, Midwest has discharged the liabilities of SRG. Thus, SRG has been and will continue to be unjustly enriched at the expense of Midwest.

## PRAYER FOR RELIEF

WHEREFORE, Midwest demands judgment in its favor against Defendant, as follows:

    (a)    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a),

        (i)    Adjudging, decreeing, and declaring that Defendant is strictly, jointly and severally liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs incurred thus far in connection with the Site, for future response costs to be incurred in connection with the Facility, and any other recoverable costs, together with interest thereon; and

        (ii)    Ordering Defendant to pay Plaintiff for response costs related to the Facility incurred to date, for all future response costs to be incurred in connection with the Facility, and any other recoverable costs, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a); and

    (b)    Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B),

        (i)    Adjudging, decreeing, and declaring that Defendant is liable pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), for contribution to Plaintiff for the response costs, the future response costs, including without limitation all amounts paid or to be paid to USEPA and/or IEPA, and for any other recoverable costs, together with interest thereon; and

        (ii)    Allocating responsibility for the response costs, the future response costs, including without limitation all amounts paid or to be paid to USEPA

and/or IEPA, and for any other recoverable costs pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), using such equitable factors as the Court determines are appropriate; and

(iii) Ordering Defendant to provide contribution to Plaintiff for the response costs, the future response costs, including without limitation all amounts paid or to be paid to USEPA and or IEPA, together with interest thereon, and for any other recoverable costs, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a); and

(c) Ordering Defendant to pay Plaintiff all damages to which it is entitled, including but not limited to, diminution in property value, loss of use and enjoyment cost of bringing the property to its original condition, investigation, remediation, and treatment, and/or to such other appropriate relief Midwest may elect at trial;

(d) Ordering Defendant to pay Plaintiff prejudgment interest and its costs of this action, including reasonable attorneys' fees; and

84. Granting Plaintiff such other, further, and different relief as the Court may deem just and appropriate.

### JURY TRIAL DEMANDED

Midwest demands a trial by jury on its state law claims.

Respectfully submitted,

/s/ *Jane E. Fedder*
Jane E. Fedder #6202516
Polsinelli PC
100 S. 4th Street, Suite 1000
St. Louis, MO 63102
(314) 552-6867
(314) 231-1776 Facsimile
jfedder@polsinelli.com